46 So.2d 173 (1950)
SWILLEY
v.
ECONOMY CAB CO. OF JACKSONVILLE.
Supreme Court of Florida, en Banc.
May 9, 1950.
Rehearing Denied May 31, 1950.
*175 Price & Stewart and Fred B. Noble, Jacksonville, for appellant.
Mathews & Mathews, Jacksonville, for appellee.
SEBRING, Justice.
The plaintiff has appealed from a judgment sustaining a demurrer to his second amended declaration. The question is whether any of the four counts of the declaration states a cause of action.
Certain allegations of fact which are common to all four counts of the declaration may be briefly stated as follows:
The defendant owned and operated a taxicab for hire in Jacksonville, Florida. The defendant accepted the plaintiff, in the nighttime and unaccompanied by any other person, as a passenger for hire and contracted to transport him in the taxicab from a point on one of the downtown streets of Jacksonville to a certain "jook-joint" about seven miles north of the City. At the time the plaintiff was received as a passenger he "was obviously and apparently drunk and intoxicated to the point of being physically and mentally irresponsible and incapable", which fact was known or should have been known to the defendant. While the plaintiff was being conveyed to his destination the left front tire of the taxicab became flat, at a point on the highway north of the City limits. Thereupon, the driver stopped the taxicab, for the purpose of repairing the tire, with all four wheels of the vehicle resting upon the pavement in such a position as to obstruct a large portion of the highway provided for northbound traffic, which was then passing the point at a high rate of speed.
Based upon these underlying facts the first count of the declaration charges that when the taxicab company accepted the plaintiff as a passenger with knowledge of his highly intoxicated condition there devolved upon the company the duty of exercising a high degree of care to convey the passenger to his destination safely; that the driver of the taxicab breached this duty in that, after he stopped the taxicab on the highway to make repairs the "plaintiff alighted from the said taxicab to the highway and did stand and remain thereon at a point between said taxicab and the center of said highway, in the lane provided for northbound traffic, which was then and there passing said point at a high rate of speed; that after knowledge of plaintiff's peril from being struck down by passing vehicles, defendant had the opportunity to, and was able to remove plaintiff from said highway by the exercise of reasonable care; that in spite of the high degree of care defendant owed to plaintiff, defendant did then and there carelessly and negligently acquiesce to plaintiff remaining in said place of danger and did fail to act in any manner to remove or attempt to remove plaintiff from his place of danger on *176 said highway, and as a proximate result of defendant's carelessness and negligence in not properly caring for plaintiff after he knew of his imminence to danger, an automobile traveling in a Northerly direction on said highway ran into and struck down the plaintiff * * *"
The second count of the declaration charges, upon the underlying facts we have stated, that after the driver of the taxicab had gotten out to repair the flat tire, the plaintiff "offered to assist defendant in the repair of said tire, and after acceptance of said offer by defendant, plaintiff alighted from said taxicab to the said highway, and in rendering or attempting to render said assistance, placed himself on the highway at a point between the left front wheel of said taxicab and the center of said highway in the lane of the highway provided for northbound traffic, which was then and there passing said point at a high rate of speed; that after knowledge of plaintiff's peril from being struck down by passing vehicles, defendant had the opportunity to, and was able to remove plaintiff from said highway by the exercise of reasonable care; that in spite of the high degree of care defendant owed the plaintiff, defendant did then and there carelessly and negligently accept plaintiff's services requiring him to remain on said highway and did fail to act in any manner to remove or attempt to remove plaintiff from his place of danger on said highway, and as a proximate result of defendant's carelessness and negligence * * * an automobile traveling in a Northerly direction on said highway ran into and struck down the plaintiff * * *"
It will be observed that in the first count of the declaration the plaintiff bases his right to recover damages on the alleged fact that after the taxicab had been stopped on the public highway for the purpose of making repairs and the plaintiff had alighted therefrom to a position of danger in the highway, the defendant's driver, who knew or should have known that plaintiff was "intoxicated to the point of being physically and mentally irresponsible and incapable" from the excessive use of intoxicating beverages, "did then and there carelessly and negligently acquiesce to plaintiff remaining in said place of danger and did fail to act in any manner to remove or attempt to remove plaintiff from his place of danger." It is contended by the plaintiff with respect to this count that inasmuch as the relationship of carrier and passenger came into existence when defendant's driver accepted the plaintiff for carriage in downtown Jacksonville, the law imposed upon the defendant the absolute duty of taking all necessary steps thereafter to prevent the plaintiff from injuring himself enroute and of delivering him to his destination safely.
We agree with the plaintiff that when the plaintiff was accepted by the defendant for carriage the relationship of carrier and passenger came into existence. Thereafter, during the course of the trip the same rule and measure of legal responsibility attached to the defendant as would attach to common carriers generally. See Korner v. Cosgrove, 108 Ohio St. 484, 141 N.E. 267, 31 A.L.R. 1193; Anderson v. Yellow Cab Company, 179 Wis. 300, 191 N.W. 748, 31 A.L.R. 1197; Huddy on Automobiles, 9th Ed. Sections 158, 161, pp. 307, 309, 310; Berry on Automobiles, 4th Ed. Section 1709, pp. 1465-1466; Annotations 4 A.L.R. 1501, 31 A.L.R. 1206. Having assumed the obligation of transporting a passenger who was intoxicated "to the point of being physically and mentally irresponsible and incapable" it became the duty of the defendant to exercise a degree of care commensurate with the condition of the passenger to the end that the passenger would be transported and delivered to his destination safely. Compare Loftin v. Florida Cities Bus Co., 159 Fla. 514, 32 So.2d 166. But this high degree of duty did not extend to the point of making the defendant an absolute insurer of the safety of its passenger; it did not require of the defendant that it place a guard over its passenger or deliver him to his destination safely at any and all events, or save him free from harm under any and every situation.
As will be seen from a critical analysis of the first count of the declaration, the plaintiff has made no complaint of the manner in which he was being transported by *177 the defendant up to the time the driver stopped his taxicab for emergency repairs. No attempt has been made to charge the defendant with dereliction of duty in stopping the cab on the public highway in order to make the repairs. The plaintiff has not attempted to fasten liability on the defendant for allowing him to alight from the cab and station himself on the highway while repairs were being made. The negligence of the defendant is supposed to have begun when, after the plaintiff had wandered onto the highway (without aid or encouragement from the defendant's driver, as we must assume) and the driver had started repairing the tire, the driver did not leave his work and remove or attempt to remove the plaintiff, by physical force if necessary, from the spot where the plaintiff had voluntarily stationed himself on the highway in plain view of passing motorists, and thus save him from the possibility of being struck by a passing vehicle operated and controlled by someone other than the defendant.
Though the law requires of a common carrier that it exercise the highest degree of care, foresight, prudence and diligence reasonably demanded at any given time by the conditions and circumstances then affecting the passenger and the carrier during the contract of carriage, Florida Ry. Co. v. Dorsey, 59 Fla. 260, 52 So. 963, the common law rule of duty and liability sustained by public policy does not extend to the point of charging the carrier and its servants with the necessity for possessing superhuman powers of anticipation or of exercising such powers in a threatened emergency. To have held the taxicab company liable for the safety of its passenger under the circumstances shown by the first count of the declaration would have been to have made of the defendant an absolute insurer of the safety of its passenger under a condition not of its own making, extending even to the point of making it an insurer against the possible negligence of some third person. This the law does not exact of a common carrier merely by reason of the fact that it accepts a person for carriage.
We find no error in the order sustaining the demurrer to the first count of the declaration.
In the second count of the declaration a quite different situation is presented in respect to the carrier and passenger relationship. In this count the plaintiff bases his right to recover damages on the concurrence of two propositions: (1) that after the taxicab had been brought to a stop on the public highway for the purpose of making repairs, the driver of the cab negligently accepted the offer of his drunken passenger to assist him in repairing the tire; the driver then knowing that the passenger was in an intoxicated condition "to the point of being physically and mentally irresponsible and incapable", and being charged with knowledge of the perilous position the passenger would necessarily have to assume without comprehension of his own danger, in rendering or attempting to render any assistance in repairing the deflated left front tire while the taxicab was stopped with its four wheels on the public highway in such a position as to obstruct a large portion of the highway provided for northbound traffic "which was then and there passing"; (2) that after the driver had negligently accepted the offer of assistance by the drunken passenger, which necessarily required the latter to alight from the taxicab and place himself on the highway "at a point between the left front wheel of said taxicab and the center of said highway in the lane of the highway provided for northbound traffic, which was then and there passing said point at a high rate of speed" the driver negligently failed "to act in any manner to remove or attempt to remove plaintiff from his place of danger on said highway, and as a proximate result of defendant's carelessness and negligence * * * an automobile traveling in a Northerly direction on said highway ran into and struck down the plaintiff." We are of the view that this count does not wholly fail to state a cause of action and that the defendant should be required to plead to the issue tendered.
It is elementary that negligence in any given situation may consist either *178 of acts of commission or of acts of omission on the part of the tort feasor. It may consist either in doing under given circumstances what a reasonable and prudent man should not ordinarily have done under such circumstances, or in failing to do what under such circumstances a reasonable and prudent man ordinarily would have done. Wharton, Law of Negligence, Sec. 1; 38 Am.Jur., Negligence, p. 642, Sec. 2; Shearman and Redfield on Negligence, Vol. 1, page 1, Sec. 1. Even when the second count of the declaration is construed most strongly against the pleader, we think it apparent that the count fairly charges the breach of a duty which was owed to the passenger that resulted in the injury to the plaintiff.
When the driver of the taxicab accepted the services of the plaintiff to aid him in repairing the tire, the plaintiff was obviously drunk "to the point of being physically and mentally irresponsible and incapable." The driver knowingly accepted the services, therefore, of a passenger who was so intoxicated from the excessive use of alcoholic liquors that he had reached the point of being physically and mentally unable "to answer for consequences", who was physically and mentally "unaccountable" for his acts, was "wanting in capacity, ability, or qualification for the purpose or end in view." See Webster's New International Dictionary, 2d Ed. Being aware of the plaintiff's physical and mental condition which, according to the literal meaning of the words used in the declaration, bordered on physical and mental helplessness, the driver negligently allowed, if not, indeed, impliedly invited, the passenger to alight from the taxicab to a position of known danger on the highway and negligently stationed him in a perilous position on the highway with full knowledge of the passenger's total lack of comprehension of the perils he was assuming. The act of accepting the services of the plaintiff amounted, under the circumstances, to a negligent act of commission on the part of the defendant's driver which, when coupled with the alleged negligent failure of the driver to do anything to remove the plaintiff from his perilous position after the services had been accepted constituted, in our opinion, a breach of the duty which the defendant owed to the plaintiff of exercising a high degree of care commensurate with the known condition of the passenger and the contract of carriage, to the end that the passenger would be transported and delivered to his destination safely, and would not be exposed enroute to obvious and unnecessary dangers of the defendant's making. See Tampa Electric Co. v. Fleischaker, 152 Fla. 701, 12 So.2d 901; Callaway v. Hart, 5 Cir., 146 F.2d 103, certiorari denied 324 U.S. 866, 65 S.Ct. 915, 89 L.Ed. 1421; Loftin v. Florida Cities Bus Co., 159 Fla. 514, 32 So.2d 166; Fagan v. Atlantic Coast Line R.R. Co., 220 N.Y. 301, 115 N.E. 704, L.R.A. 1917E, 663; McGee v. Missouri Pacific Ry. Co., 92 Mo. 208, 4 S.W. 739, 1 Am.St.Rep. 706; Black v. New York N.H. & H.R. Co., 193 Mass. 448, 79 N.E. 797, 7 L.R.A.,N.S., 148, 9 Am.Cas. 485.
The fact that the defendant was intoxicated at the time of the acceptance of his services by the driver did not lessen the burden of any duty owed by the defendant to the plaintiff but, in fact, increased it. Neither did the fact that the plaintiff was intoxicated at the time constitute contributory negligence per se on the part of the plaintiff so as to bar him from recovery for the negligent acts of the defendant. Though, generally speaking, a common carrier is not bound to protect intoxicated persons from the consequences which may result from their own wrongs and follies, there may be responsibility where the carrier accepts the passenger, being aware of his intoxication and inability to take care of himself, and places him in a position where the carrier could or should foresee that he might suffer injury as the result of his exposure to danger. Wheeler on the Modern Law of Carriers, Sec. VI, p. 155; White, Personal Injuries on Railroads, Vol. 12, p. 1084, Sec. 714; 10 Am.Jur., Carriers, Sec. 1277, p. 186; Gates v. Bisso Ferry Co., La. App., 172 So. 829.
Counts three and four of the amended declaration are in substance the same as counts one and two, respectively *179 but include the additionl charge that the driver of defendant's taxicab was guilty of negligence in stopping the cab on the public highway in order to make repairs, in violation of the laws of Florida. They are different, however, in that instead of alleging that plaintiff was injured by the automobile which ran directly into him, as was charged in the first and second counts, the allegations as to injury are that "an automobile traveling in a Northerly direction on said highway was caused to be run into the left rear of said taxicab with its right front portion, which said automobile glanced off said taxicab and continued forward in a Northerly direction and struck down the plaintiff on said highway."
We do not perceive wherein these additional allegations can affect the conclusions we have reached with respect to the sufficiency of counts one and two of the declaration. In our view counts one and three were insufficient as against demurrer, and hence the demurrer was properly sustained; but counts two and four are sufficient, in our opinion, to require of the defendant an answer.
It should be plainly understood that in arriving at our conclusion, we have made no effort to settle the relative merits of the cause which may be finally submitted to a jury for determination. Indeed, to settle such issues at this stage of the case would be entirely beyond our sphere of competence. Whether, as a matter of fact, the plaintiff was injured as the result of the sole negligence of the defendant, or whether he, himself, produced his own injury; whether he was injured by the concurrent negligence of the defendant and a third person; or whether the injury resulted entirely from the sole negligence of a third person, are matters which are not before us for determination. All that we have before us is a pure question of pleading, whether the declaration as framed is sufficient as a statement of a cause of action to require an answer on the part of the defendant; and this point is all that we are deciding.
There are instances where, upon a specific statement of facts, the court can easily determine with finality that a failure to act in a certain manner is negligence as a matter of law, and others where it can say with equal finality that such failure does not constitute negligence. Between those two extremes is a zone of uncertainty which is entirely dependent upon the development of the facts for its ascertainment. Where such an instance appears from the declaration a demurrer should not ordinarily be sustained thereto. It is into this latter zone that this present case appears to fall and therefore the issue should be submitted to a jury for a determination of whether the conduct of the driver, both active and passive, as the same may be sustained by evidence, constituted negligence on the part of the defendant, entitling the plaintiff to recover. See 38 Am.Jur., Negligence, Sec. 344, P. 1041; Southern Express Co. v. Williamson, 66 Fla. 286, 63 So. 433, L.R.A. 1916C, 1208; Moore v. Dietrich, 133 Fla. 809, 183 So. 2.
Having concluded that the second and fourth counts of the declaration should be answered, the judgment appealed from should be affirmed in part and reversed in part with leave to the defendant to plead to these counts in conformance with this conclusion and judgment.
It is so ordered.
CHAPMAN, THOMAS and HOBSON, JJ., concur.
ADAMS, C.J., and TERRELL and ROBERTS, JJ., dissent.
ROBERTS, Justice (dissenting).
Plaintiff-appellant brought suit in the court below to recover for damages alleged to have been sustained because of the negligence of defendant's employee. The defendant's demurrer to plaintiff's second amended declaration being sustained, and the plaintiff declining to plead further, final judgment against plaintiff was entered, from which judgment this appeal has been taken.
The allegations of plaintiff's declaration are, in substance, as follows: The defendant owned and operated a taxicab for hire in Jacksonville, Florida. The defendant's *180 employee, the driver of the cab, accepted the plaintiff, in the night-time and unaccompanied by any other person, as a passenger for hire and contracted to transport him in the taxicab from a point on one of the downtown streets of Jacksonville to a certain "jook joint" about seven miles north of the city. At the time, the plaintiff "was obviously and apparently drunk and intoxicated to the point of being physically and mentally irresponsible and incapable," which fact was known to or should have been known to the defendant. While the plaintiff was being conveyed to his destination, and at a point north of the city limits, the left front tire of the taxicab became flat, whereupon the cab driver stopped the taxicab, with all four wheels on the highway, for the purpose of repairing the tire.
The negligence attributable to the defendant was alleged, in the first count of the declaration, to be as follows: The plaintiff alighted from the cab, for a reason not disclosed in this count, and stood on the highway between the cab and the center line of the highway. The defendant "did then and there carelessly and negligently acquiesce to plaintiff remaining in such place of danger and did fail to act in any manner to remove or attempt to remove him from such place of danger." As a proximate result of defendant's carelessness and negligence in not properly caring for plaintiff after he knew of his imminence to danger, it is alleged, plaintiff was struck down by an automobile traveling in a northerly direction (the same direction in which the taxicab was headed.)
The second count of the declaration alleges defendant's negligence to be that plaintiff offered to assist defendant in repairing the tire and, after acceptance of such offer, alighted from the cab to the highway and in rendering or attempting to render assistance placed himself on the highway at a point between the left front wheel of the cab and the center line of the highway; that defendant "did then and there carelessly and negligently accept plaintiff's services requiring him to remain on said highway and did fail to act in any manner to remove or attempt to remove plaintiff from his place of danger on said highway," as a proximate result of which the plaintiff was injured in the manner alleged in the first count of the declaration.
The third and fourth counts are similar in their allegations of negligence to the first and second counts, respectively, except that the third and fourth counts allege an additional act of negligence in that defendant "stopped the said taxicab on said highway and did negligently and carelessly leave same standing for repair on said highway, with its four wheels on the main travelled part thereof" contrary to the laws of the State of Florida. The third and fourth counts also allege the cause of plaintiff's injury to be that "an automobile traveling in a Northerly direction on said highway was caused to be run into the left rear of said taxicab with its right front portion, which said automobile glanced off said taxicab and continued forward in a northerly direction and struck down the plaintiff on said highway."
It is generally held that a taxicab company, being in the business of transporting passengers for hire, is a common carrier; and, as such, it owes to its passengers the highest degree of care, foresight, prudence and diligence reasonably demanded at any given time by the conditions and circumstances then affecting the passenger and carrier. Florida Ry. Co. v. Dorsey, 59 Fla. 260, 52 So. 963.
But common carriers of passengers for hire are not insurers of such passengers' safety. Michie, Carriers, Sec. 2278; Florida Ry. Co. v. Dorsey, supra; Nicholson v. Porter, 118 Cal. App. 555, 5 P.2d 659; Martin v. Interurban Transp. Co., 15 La. App. 256, 131 So. 514. And it is well settled that a person who, by his own act, subjects himself unnecessarily to danger violates the duty imposed upon all men to use ordinary care for their own safety and is guilty of contributory negligence. 38 Am.Jur., Negligence, Section 182, page 859. Thus, in carrier law, a passenger who exposes himself to danger or who ignores the hazards in a particular situation will be precluded from recovery for any resulting injuries. 10 Am.Jur., Carriers, Section 1477; Michie, Carriers, *181 Section 2703; Moore, Carriers, Ch. XXV, Section 3; Fordyce v. White Star Bus Lines, 304 Pa. 106, 155 A. 98; Baryluk v. United Electric Ry. Co., 53 R.I. 306, 166 A. 356.
It may be seen, therefore, that under the particular circumstances here alleged, the plaintiff, had he been sober, would have no cause of action against the defendant. He voluntarily left his place of safety and unnecessarily exposed himself to danger. He is thus precluded from recovery from this defendant for the resulting injuries, unless the fact of his voluntary intoxication will absolve him from the consequences of his action.
Ordinarily, voluntary intoxication does not relieve one from contributory negligence, or serve to relax the requirement which is imposed upon a person to exercise due care for his own safety. A person who is voluntarily intoxicated is required to exercise the same degree of care and caution in avoiding danger as required of a sober person of ordinary prudence under similar circumstances. 38 Am. Jur., Negligence, Section 203, page 883. And this rule applies to carrier law, as well as to the ordinary law of negligence. 10 Am.Jur., Carriers, Section 1534, page 311; Moore, Carriers, Ch. XXV, Section 8; Hutchison Carriers (3rd Ed.) Section 1230; Chevalier v. Chicago Transit Authority, 338 Ill. App. 119, 86 N.E.2d 838; Smith v. Service Cab Co., La. App., 155 So. 774.
The plaintiff alleges, however, that because of his intoxicated condition, it was the duty of defendant to act in some manner to remove or attempt to remove him from the place of danger into which he had voluntarily gone; and, also, that defendant breached its duty towards him by accepting his offer of assistance in repairing the tire; and that such breaches of duty, or either of them, caused the plaintiff to be injured.
There is a line of cases in which it has been held that, if a carrier accepts an unattended passenger who is so drunk as to be in a helpless condition, of which the carrier has knowledge, and the passenger places himself in a dangerous situation which is beyond his immediate control, then if an injury is received by such passenger as a proximate result of defendant carrier's negligence, the pre-existing condition of intoxication of the passenger cannot be considered as an element demonstrating contributory negligence. Panor v. Northwestern Elevated Railroad Co., 228 Ill. App. 162; Price v. St. Louis, etc. R. Co., 75 Ark. 479, 88 S.W. 575, 112 Am.St.Rep. 79; Black v. New York Etc. R. Co., 193 Mass. 448, 79 N.E. 797, 7 L.R.A.,N.S., 148, 9 Ann.Cas. 485; Wheeler v. Grand Trunk Ry. Co., 70 N.H. 607, 50 A. 103, 54 L.R.A. 955; Fagan v. Atlantic Coast Line R.R. Co., 220 N.Y. 301, 115 N.E. 704, 705, L.R.A. 1917E, 663; Gates v. Bisso Ferry Co., La. App., 172 So. 829; Fardette v. New York & S.R. Co., 190 App.Div. 543, 180 N.Y.S. 179.
Evidently by analogy to the "last clear chance" doctrine, the intoxication of the passenger is said to be a condition only under which the problem must be solved, and a remote not proximate cause of the injury, although it may have been present and may have affected the conduct of the plaintiff at the time of the accident. An analysis of the cases cited immediately above shows that in each case the carrier was held responsible for a drunken passenger's injuries because it either (1) ejected the passenger from the vehicle in a place which, because of the passenger's helpless condition, was dangerous, or (2) allowed the drunken passenger to remain in a place in its conveyance which was, for the same reason, dangerous. In each such case it would appear to have been peculiarly within the province of the employees of the carrier to avoid or avert an injury to a passenger who was himself powerless to do so. Thus, not only in reason, but in humanity, such cases are properly an exception to the general rule that a carrier is not bound to protect an intoxicated person from the consequences which might result from his own wrongs or follies. R.C.L., Vol. 4, Sec. 595; 10 Am.Jur., Carriers, Sec. 1482, page 283.
In the instant case, however, no such showing was made by the allegations of the declaration. The plaintiff was not injured *182 by virtue of the operation or condition of the taxicab as it related to or should have been adjusted to, his intoxication. He was not ejected from the taxicab, nor was he requested to emerge from his place of safety. He took it upon himself to offer to assist the defendant in the tire-changing activities, or to attempt to render some assistance to the driver. He was not, therefore, in either of the situations described in the preceding paragraph, and such cases are not authority for the proposition that the carrier, in the instant case, owed a special care and duty to this plaintiff because of his intoxicated condition.
Moreover, it does not appear that the plaintiff was in the completely helpless condition contemplated by the above-cited cases. The allegation that plaintiff "was obviously and apparently drunk and intoxicated to the point of being physically and mentally irresponsible and incapable," while possibly not a conclusion of the pleader, is certainly a statement in general, rather than specific, terms of plaintiff's condition, which should be read and construed in the light of the other specific allegations of his declaration. Thus, it affirmatively appears that plaintiff, unaccompanied by any person, got into defendant's cab and gave directions as to how to get to a juke joint, some seven miles away; that he alighted, under his own power, from the taxicab and, under the allegations of the second count, either rendered or attempted to render assistance to the cab driver. Partial intoxication does not excuse want of ordinary care and prudence on the part of a passenger, and a railroad company need exercise no higher degree of care towards a person partially intoxicated than is required in case of persons not intoxicated. Missouri Pac. Ry. Co. v. Evans, 71 Tex. 361, 9 S.W. 325, 1 L.R.A. 476.
It is my opinion, therefore, that the allegations of the declaration here do not bring this case within the rule laid down in the line of cases cited above, and that defendant's acceptance of plaintiff's offer of assistance and/or defendant's failure to act in any way to remove or attempt to remove plaintiff from his place of danger, cannot be said to be the proximate cause of his injuries.
Even though defendant was negligent in parking the cab with all four wheels on the highway, as alleged in Counts Three and Four of the declaration, this was obviously not the efficient producing cause of plaintiff's injury, since if plaintiff had remained in the cab, he would not have received the injuries here complained of.
For the reasons stated, the judgment of the court below should be affirmed.
ADAMS, C.J., and TERRELL, J., concur.